# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

CARLOS GONZALEZ,

                                        Plaintiff,

                                                            DECISION & ORDER

          -vs-                                              12-CV-6151-CJS

CARESTREAM HEALTH, INC.,

                                        Defendant.

---

## APPEARANCES

For Plaintiff:          Richard N. Franco, Esq.
                        Christina A. Agola PLLC
                        1415 Monroe Avenue
                        Rochester, NY 14618-1007
                        (585) 262-3325

For Defendant:          Jeffrey J. Calabrese, Esq.
                        Harter, Secrest & Emery LLP
                        1600 Bausch & Lomb Place
                        Rochester, NY 14604-2711
                        (585) 231-1280

## INTRODUCTION

**Siragusa, J.** Plaintiff filed a complaint alleging violations under the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the Family Medical Leave Act ("FMLA"). The case is now before the Court on Carestream Health, Inc.'s ("Carestream") motion to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted. For the reasons stated

below, the application is granted and the Clerk is directed to enter judgment in favor of Defendant.

## FACTUAL BACKGROUND

Since the motion is brought under Federal Rule of Civil Procedure 12, the Court must presume that the allegations in the complaint are true and resolve all doubts and inferences in favor of the nonmoving party. *See Wright v. Ernst & Young LLP*, 152 F.3d 169,173 (2d Cir.1998). Defendant has relied upon documents outside the complaint in support of their positions. As the Court of Appeals stated, "[f]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference…and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit…." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted). The Court will apply this direction from the Circuit to determine whether papers outside the complaint, relied upon by Defendant, should be considered.

The portions of the complaint relevant to the pending motion are as follows:

10. Plaintiff is a male and was born on December 21,1949.

11. Plaintiff was sixty (60) years old at the time of his termination.

12. Plaintiff was hired as a "Project Manager" in or about February of 1976 by Kodak, which became Carestream, on May 1, 2007.

13. Plaintiff maintained a stellar work record prior to his termination in June of 2010.

14. Due to a medical condition and subsequent surgery, both of which were FMLA qualifying, Plaintiff was out of work for four weeks from approximately September 21, 2009 through October 16, 2009.

15. Immediately upon his return to work, Plaintiff was subject to retaliation for having exercised his rights under the FMLA.

16. On or about October 29, 2009, Plaintiff's supervisor admonished him for a task that he did not, and could not, complete due to his FMLA qualifying medical leave.

17. On February 4, 2010, Plaintiff participated in a telephone conference with his supervisor in which his supervisor was critical of additional incomplete tasks that were due during Plaintiff's FMLA qualifying medical absence.

18. Plaintiff was also blamed for time frames not being adhered to for conditions out of Plaintiff's control.

19. This was Plaintiff's first indication he would be receiving a negative review.

20. On February 26, 2010 a bonus was given to the entire company. However, due to his poor performance appraisal, Plaintiff was not eligible for the bonus.

21. In or about March 2010, Plaintiff received a performance appraisal that indicated, for the first time in his career, that he was rated in the bottom ten (10) percent of all employees.

22. Plaintiff was shocked and humiliated since during his tenure he had previously been rated as an outstanding employee.

23. Plaintiff's projects have been written about in company newsletters and Plaintiff was also featured in the Society for Hispanic Professional Engineers for all of his successful contributions.

24. On April 15, 2010, Plaintiff was placed on a Performance Improvement Plan ("PIP") for the first time in his 34 years on the job.

25. On April 29, 2010 Plaintiff's team received an email congratulating them on completing their team project, Image Suite. Plaintiff did not receive the email in spite of being the Project Manager.

26. On April 29, 2010, Diana Nole, President of Digital Medical Solutions sent another email calling Image Suite "a great new product in the portfolio to drive more sales."

27. On May 6, 2010, Plaintiff received another PIP, which is updated from the one he received in April.

28. On June 30, 2010, Plaintiff attended what he thought was a meeting to discuss his PIP since he had sent in his response on June 25.

29. Without any discussion or review of Plaintiff's responses to his PIP, Plaintiff was told he was being terminated due to poor performance.

30. Plaintiff was terminated based on his age, in violation of the ADEA and the New York State Executive Law and for retaliation under that act.

31. As set forth above, Plaintiff had been employed by the Defendant for more than one (1) year and had worked in excess of one thousand two hundred fifty (1,250) hours during the year preceding her [sic] termination on June 30, 2010.

32. Any "legitimate reason" proffered by the Defendant for Plaintiff's termination is pretextual as a matter of law.

(Compl. ¶¶ 10–32.) As indicated above, Plaintiff's complaint contains three causes of action. In the first, he alleges a violation of the ADEA. In the second, he alleges a violation of the New York State Human Rights Law based on unlawful age discrimination. In the third, he alleges retaliation under the FMLA.

Attached to its motion papers, Carestream has included the following documents: (1) Goal Setting and Appraisal (01/01/2008 to 12/31/2008); (2) 2008 Performance Appraisal—Carlos Gonzalez; (3) Goal Setting and Appraisal (01/01/2009 to 12/31/2009); (4) Performance Improvement Plan for Carlos Gonzalez (Apr. 17, 2010); (5) Performance Improvement Plan for Carlos Gonzalez (Jun. 30, 2010). Burkwit Decl. Exs. A–D, May 7, 2012, ECF No. 4-1, 4-2, 4-3, 4-4 & 4-5.Carestream argues that,

> by discussing his pre- and post-FMLA performance evaluations and his performance improvement plan in his Complaint, Gonzalez has incorporated such documents into his Complaint by reference. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 123-24 (W.D.N.Y. 2010). As a result, the Court may consider such documents when analyzing Defendant's Rule 12(b)(6) motion. Therefore, copies of Gonzalez's performance evaluations which immediately preceded and followed his FMLA leave and performance improvement plan (with updates), all of which he refers to in his Complaint, are attached to the Burkwit Declaration.

Def.'s Mem. of Law at 2, n.2, May 7, 2012, ECF No. 4-6.

In his responsive papers to Carestream's motion, Plaintiff does not object[1] to the Court's consideration of the exhibits Carestream submitted.

## STANDARDS OF LAW

### Fed. R. Civ. P. 12(b)(6)

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated:

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the

---

[1]At oral argument, Plaintiff's counsel agreed that the Court could properly consider the documents submitted by Defendant.

other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, 566 U.S. 662 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678–79.

**Age Discrimination in Employment Act**

A cause of action here is brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621, *et seq*. ADEA provides in pertinent part as follows:

> (a) Employer practices. It shall be unlawful for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age….

29 U.S.C.S. § 623(a)(1) (2012). To plead a claim under the ADEA, a plaintiff must show that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the circumstances surrounding that

action permit an inference of discrimination. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d

553, 559 (2d Cir. 1997), *cert denied* 525 U.S. 936 (1998).

### New York Human Rights Law

New York Executive Law § 296 provides in pertinent part as follows:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. Exec. Law § 296(1) (2007). The Court notes that both State and Federal courts have

determined that,

the elements of an age discrimination claim under the New York State Human Rights Law and the ADEA are essentially the same and courts apply the same standards for analyzing age discrimination claims under both statutes (*see Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913; *Ferrante v. American Lung Assn.*, 90 N.Y.2d 623, 665 N.Y.S.2d 25, 687 N.E.2d 1308; *Hardy v. General Elec. Co.*, 270 A.D.2d 700, 701, 705 N.Y.S.2d 97).

*Brannigan v. Board of Educ. of Levittown Union Free School Dist.*, 18 A.D.3d 787, 789,

796 N.Y.S.2d 690, 692 (N.Y.A.D. 2d Dept. 2005).

### Family Medical Leave Act

The Southern District Court in *Smith v. Westchester County*, 769 F. Supp. 2d 448

(2011), discussed the elements of a retaliation claim under the FMLA:

In an FMLA retaliation claim, "an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Krosmico*, 2006 WL 3050869, at *2. To state a claim for retaliation under the FMLA, Plaintiff must allege that: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168. The Second Circuit has held that at the summary judgment stage, FMLA retaliation claims should be analyzed under the

burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Potenza*, 365 F.3d at 167–68. However, "a complaint asserting an employment discrimination claim, including an FMLA retaliation claim, need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss." *Peterson v. Long Island R.R. Co.*, No. 10–CV–480, 2010 WL 2671717, at *2 (E.D.N.Y. June 30, 2010); *see also Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275–76 (S.D.N.Y.2010). Instead, to state an FMLA retaliation claim, Plaintiff "need only show that [his] claims are plausible under *Iqbal* and *Twombly*," by "plead[ing] facts sufficient to state a claim to relief that is plausible on its face." *Harper v. N.Y.C. Hous. Auth.*, 673 F. Supp. 2d 174, 178, 180 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008) (holding that "the *McDonnell Douglas* burden-shifting framework is an evidentiary standard, not a pleading requirement, and that to require more than Rule 8(a)'s simplified notice pleading standard would unjustifiedly impose a heightened pleading requirement on the plaintiff" (internal quotation marks omitted)).

Smith, 769 F. Supp. 2d at 469–70; *see also, Milne v. Navigant Consulting*, No. 08 Civ. 8964 (NRB), 2010 U.S. Dist. LEXIS 115650 (S.D.N.Y. Oct. 27, 2010); *Brown v. The Pension Boards*, 488 F. Supp 2d. 395 (S.D.N.Y. 2007).


## ANALYSIS

### *Pleading Standard*

As to the pleading standard for an employment discrimination case, this Court has previously determined that,

> courts have generally found that "a complaint need not establish a *prima facie* case of employment discrimination to survive a motion to dismiss; however, 'the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim.'" *Kleehammer v. Monroe County*, 743 F. Supp. 2d 175, 183 (W.D.N.Y. 2010) (quoting *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010); *McDowell v. North Shore-Long Jewish Health Sys.*, 839 F. Supp. 2d 562, 565 (E.D.N.Y. 2012); *Fowler v. Scores Holding Co., Inc.*, 677 F.Supp.2d 673, 678-679 (S.D.N.Y. 2009).

*Stokes v. Nestle Purina Petcare Co.*, No. 12-CV-0895-WMS, 2012 U.S. Dist. LEXIS 122927, 14-15 (W.D.N.Y. Aug. 23, 2012).

### ADEA & NYSHRL Claims Based on Age Discrimination

As stated above, Plaintiff claims that Carestream discriminated against him on the basis of his age. Viewing the complaint in the light most favorable to Plaintiff, the Court finds the following allegations in support of the age discrimination claims: (1) Plaintiff was sixty years old at the time he was terminated, Compl. ¶ 11; (2) Plaintiff maintained a stellar work record prior to his termination, Compl. ¶ 13; (3) Plaintiff was terminated on June 20, 2010, Compl. ¶ 28; and (4) "Plaintiff was terminated based on his age, in violation of the ADEA and the New York State Executive Law and for retaliation under that act," Compl. ¶ 30. Plaintiff also alleges in his complaint that,

> The employment practices of Defendant described above harm older employees of the Defendant and favor younger employees. Defendant, through its agents, engaged in a pattern of unlawful age discrimination based on age in that Plaintiff was subject to termination, while other substantially younger employees were maintained in violation of the ADEA. The practices so described are not based upon a reasonable factor other than age and are in fact the "but for" reason for the termination of the Plaintiff.

Compl. ¶ 34.

Nothing in the complaint supports a plausible claim that Carestream engaged in age discrimination. Plaintiff's allegations regarding the basis for his termination and Defendant's "employment practices" are merely threadbare recitals of the elements of a cause of action supported only by bare conclusory statements. Accordingly, the first and second causes of action are dismissed for failure to state a claim upon which relief can be granted.

***FMLA Retaliation***

To state a claim for retaliation under the FMLA, Plaintiff must show that: (1) he exercised rights protected under the FMLA; (2) he was otherwise qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Plaintiff was a Project Manager for Carestream and began work there on May 1, 2007. Compl. ¶ 12. Plaintiff's performance appraisals, submitted by Defendant, incorporated by the complaint and evidently relied upon by Plaintiff in writing the complaint, show "disappointments in schedule performance throughout [2008]." 2008 Performance Appraisal—Carlos Gonzalez, Jan. 1, 2008–Dec. 31, 2008, ECF No. 4-2. The Self Assessment portion of the 2008 appraisal contains these comments:

> 7/4/08: Team struggled with numerous technical problems; revised Gate 3D commitment is 10/23/08. First, found image artifacts related to [redacted] (the reason why July 10 commit was TBD), and transport failures. Decided to abandon the [redacted]. Also, found and corrected screen delamination related to contamination in manufacturing. At present, have changed screen design to resolve a [redacted] problem. Testing underway; this is a very high schedule risk. Finally, changed project scope to deliver [redacted] at Gate 3D.

> 10/16/08: Revised Gate 3D commitment to 12/18/08, due mainly to delay in screen readiness, and also to delay in availability of PoC resources. Also deleted requirements of supporting [redacted]. Changes further described in PCN.

> 12/11/08: Beat October commitment and passed Gate 3D, including releasing [redacted] mods and all [redacted] screen sizes, plus the top 3 [redacted] screen sizes for [redacted]. The remaining sizes not released for [redacted] because Validation resources were redirected.

*Id*. The Supervisor Assessment for the 2008 performance evaluation contains these comments:

> Carlos has done an acceptable job managing the problems as they arise but we continue to have issues arise late in the game. Need to improve on risk analysis early in the program to make sure we identify all risks and mitigate risks earlier thereby creating more predictable performance.

*Id.* The 2008 performance appraisal ends with the following recommendation for Plaintiff in 2009:

> For 2009 Carlos needs to work with his commercialization teams on improving schedule performance. Carlos needs to help the commercialization team do a better job with risk assessment, contingency plans, and keeping focus on the critical items which will deliver the program. Additionally I would like Carlos to continue to work on knowing when detail is needed and when it is not. One of the detriments of being very detail oriented is at certain stages of the program this can result in wasted effort. Making sure early on in programs that the team has the big picture and understands where they are relative to the overall goal is important to keep them from getting lost in the details and heading down paths which will not create success or will result in delays.

*Id.* Plaintiff was out of work on FMLA leave from September 21, 2009 through October 16, 2009, a period of twenty-five days. He alleges that "[i]mmediately upon his return to work, [he] was subjected to retaliation for having exercised his rights under the FMLA." Compl. ¶ 15. In support of this contention, Plaintiff alleges as follows:

> 16. On or about October 29, 2009, Plaintiff's supervisor admonished him for a task that he did not, and could not, complete due to his FMLA qualifying medical leave.

> 17. On February 4, 2010, Plaintiff participated in a telephone conference with his supervisor in which his supervisor was critical of additional incomplete tasks that were due during Plaintiff's FMLA qualifying medical absence.

> 18. Plaintiff was also blamed for time frames not being adhered to for conditions out of Plaintiff's control.

> 19. This was Plaintiff's first indication he would be receiving a negative review.

Compl. ¶¶ 16–19. Contrary to the conclusion in paragraph 19, the October 2009 admonishment and February 2010 telephone conversation (assuming the word "this" in

¶ 19 refers to both the events of October 29, 2009 and February 4, 2010) were not the first indications Plaintiff would receive a negative review. Undisputed is the fact that his 2008 performance appraisal already contained negative comments, and recommendations for improvement in 2009. Moreover, Plaintiff's 2009 performance appraisal contained the following comments under the Self Assessment section for goal five, "Receive regulatory approvals for last 7 countries (June):

> 9/23: That was during my medical absence, so still need to determine if a meeting to review is required. Since Jan. launch have shipped over [redacted] units and [redacted] and there are no field issues. Thru 3Q, [redacted] resulted in a $[redacted] productivity increase by replacing [redacted] systems; project a total $[redacted] productivity by YE.

Goal Setting and Appraisal, Jan 1, 2009 to Dec. 31, 2009, ECF No. 4-3. The Supervisor Assessment portion for the same quarter contained these comments:

> Q3 I need Carlos to complete the post release assessment. Q3 Results: Missed committment [sic] on completing post release assessment but product continues to perform well. Agree with Carlos' [sic] that he needs to determine what is needed to close this out and complete actions by end of 2009.

*Id*. The Supervisor Assessment portion for the fourth quarter contains these comments:

> 4th Qtr Results: Post release assessment was completed in Q4 much later than planned Q2. This did not impact the business negatively and did allow for much more data to be collected. Results of the assessment were very good indicating robust product performance.

*Id*. The portion of the 2009 performance appraisal labeled "1.2 [redacted] Gate 1," contained these comments concerning Plaintiff's FMLA leave in the Supervisor Assessment portion:

> Q3 Results: Carlos was having a difficult time managing both [redacted] and [redacted] programs due to work load. Given Carlos' pending medical leave I asked Carlos to transition responsibilities for the program to Alice Moon enabling a smooth transition in program leadership without any schedule

delays. Team was about a week late in Gate 1 vs commit but overall program on track for Gate 2.

*Id*. The 2009 performance appraisal ends with an overall rating of, "(3) Less than Successful Performance." *Id*.

On April 15, 2010, Plaintiff was placed on a Performance Improvement Plan ("PIP"). Compl. ¶ 24. The PIP documented four areas for improvement and set out specific actions and goals with due dates. Performance Improvement Plan, Apr. 12, 2010, ECF No. 4-4. Plaintiff received an updated PIP on May 6, 2010. Compl. ¶ 27. Finally, on June 30, 2010, Plaintiff was terminated "due to poor performance." Compl. ¶¶ 28–29. The time between his return from FMLA leave on October 16, 2009, until his termination on June 30, 2010, was eight months and two weeks, or 257 days.

Nothing in Plaintiff's complaint plausibly alleges that his termination was due to retaliation because he availed himself of FMLA leave. The comments Plaintiff alleges were made by his supervisor concerning failures to meet goals during the time he was on FMLA leave are belied by the performance appraisals. Nevertheless, it appears that Plaintiff is relying on the temporal proximity between the FMLA leave, or the adverse comments, and his termination. Assuming the truth of Plaintiff's allegations, those comments and the telephone conference took place as late as February 4, 2010, almost five months[2] before his termination. As the district court observed in *McDowell v. N. Shore-Long Island Jewish Health Sys.*, 788 F. Supp. 2d 78 (E.D.N.Y. 2011):

> The Second Circuit has not established a bright line rule as to how closely an adverse employment action must follow protected activity to imply that the former was in retaliation for the latter. *See, e.g., Espinal v. Goord*, 558 F.3d

---

[2]The actual time is four months, three weeks and five days, or 146 days.

119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)). While some courts within this Circuit have held that a three month gap is insufficient to show a causal connection, others have found that a separation of as much as eight months will permit an inference of causation. *Id.* (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) and *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980)).

*Id.* at 82. Here, Plaintiff's reliance on temporal proximity does not lend plausibility to his claim that his termination was due to retaliation. His termination occurred eight months after his return from leave and this time period is too attenuated to allow for the conclusion that his termination was in retaliation for the FMLA leave period. Though the adverse comments occurred close in time to his termination, the performance appraisals and PIPs do not support Plaintiff's conclusion that the comments he alleges his supervisor made were indicative of a retaliatory intent. Plaintiff's claim that his termination on June 30, 2010, was in retaliation for his twenty-five-day FMLA leave, which ended on October 16, 2009, is not plausible. Therefore, his third cause of action must be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, the Court grants Defendant's motion to dismiss, May 7, 2012, ECF No. 4, is granted. The Clerk is directed to enter judgment for Defendant and close this case.

IT IS SO ORDERED.

Dated:   September 18, 2012
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge